[No. D021735. Fourth Dist., Div. One. July 15, 1997.]

LUCY R. GONZALES, Plaintiff and Appellant, v.
PERSONAL STORAGE, INC., Defendant and Appellant.

COUNSEL

Robert P. Ottilie for Plaintiff and Appellant.

Balestreri, Dorigan & Pendleton, Thomas A. Balestreri, Jr., and Patricia Chavarria Perez for Defendant and Appellant.

**OPINION**

**BENKE, Acting P. J.**—In this case we consider the question of whether a self-storage facility which converted approximately $60,000 of a tenant's personal property is liable for the severe emotional distress the tenant suffered when the tenant learned about the conversion. As we explain below, we find the self-storage facility is liable for the tenant's emotional distress.

I

FACTUAL BACKGROUND

Plaintiff and respondent Lucy R. Gonzales is a native of the Philippines and was married for many years to an officer in the United States Navy. As a result of her husband's travels during the course of his naval career, Gonzales had collected a number of rare and valuable pieces of furniture and personal belongings. Gonzales was also an active member of the local Filipino community and in 1968 she founded the Maria Clara de Pilipinas Sorority. Under her direction the sorority works with high school girls in the

Filipino community preparing them for the annual spring debutante ball. Gonzales also was the owner and operator of an office supply business in National City.

In 1989 Gonzales's marriage was dissolved and she was required to sell her family home and move into her daughter's home. Because of the large quantity of her personal belongings, she decided to rent storage space at a facility operated by defendant and appellant Personal Storage, Inc. (Personal Storage). At the time she entered into a lease with Personal Storage, Gonzales explained to the person showing her the facility that she had a large amount of rare furniture, keepsakes, heirlooms and other personal belongings which she needed to store because of her divorce. After executing the lease, Gonzales stored her personal belongings at Personal Storage's facility. As contemplated by her lease, Gonzales put a lock on her storage space.

According to both Gonzales and one of the experts retained by Personal Storage, the replacement value of the items Gonzales stored was approximately $196,000. A second expert called by Personal Storage stated the items would probably have a fair market value of 25 to 35 percent of their replacement value.[1]

Under the terms of the lease Gonzales was required to pay Personal Storage $130 a month. In the summer of 1991 Gonzales fell behind in her rent and Personal Storage sent her a preliminary lien notice and a later notice of lien sale under the provisions of the California Self-Storage Facility Act (Bus. & Prof. Code, § 21700 et seq.). In August 1991 Gonzales paid Personal Storage $500 and was told the payment brought her account current.

In January 1992 Gonzales again failed to make her rent payment. At some point in late January 1992, Personal Storage employees cut Gonzales's lock

---

[1]The following is a partial inventory of the items Gonzales stored: all her family photographs, including the only photograph of a child she lost at the age of five months, a written family history, acacia wood furniture which had been made for her in the Philippines, Persian and Chinese rugs, marble breakfast tables, gold breakfast chairs, a jade centerpiece, oil paintings, Nortitake 12-place China set, Rose 12-place China set, Leonor 12-piece silver set, gold goblets, silver goblets, a silver punch set, Oneida serving trays, Oneida chafing dishes, a Korean cabinet with ivory and jade inlay, Korean frames with ivory and jade inlay, an Italian chandelier, multiple framed silks from Thailand and Vietnam, a tea cart and set with pearl inlay, collectible elephants, reindeers, German pilsners, Hataka dolls, a Korean stove, stereos, 24 formal Philippine gowns, 12 evening gowns, shoes, handbags, suits, multiple bedding sets, bamboo serving trays, Hawaiian costumes and Hawaiian record collection, Gonzales's assorted awards and mementos, her daughter's wedding and debutante gowns, serving and entertaining sets, 24 jade eggs from Taiwan, a Chinese abacus, a Chinese wine set, an antique Chinese teapot, a tea set made in occupied Japan, and original Hawaiian doll collector items.

off her unit and replaced it with a Personal Storage lock. At that point Personal Storage also arranged for an auctioneer to inspect the goods in Gonzales's unit.

Instead of giving Gonzales another preliminary lien notice and another notice of lien sale, Personal Storage placed an advertisement for an auction in the San Diego Daily Transcript. The advertisement provided Gonzales's full name, her unit number and a detailed description of the items in her unit. Personal Storage sent Gonzales a copy of the advertisement and a note which stated that she would have to bring her rent current by February 10, 1992, in order to avoid the auction.

According to employees of Personal Storage, on February 4, 1992, a thin woman and an elderly man came to the storage facility and the woman falsely claimed to be Gonzales. The impostor tendered payment of the $336 in rent then due; without asking the woman to produce any identification, Personal Storage employees removed the company's lock from Gonzales's unit. The employees watched as the impostor and her companion then loaded Gonzales's belongings into a U-Haul truck and left the scene.

On February 6, 1992, Personal Storage received a cashier's check from Gonzales in the amount of $526. On February 7, 1992, Gonzales called Personal Storage to verify receipt of her payment. A Personal Storage employee told her there had been "a mix-up." The employee then told Gonzales that someone had come to Personal Storage on February 4, paid the outstanding rent and emptied the storage unit.

Gonzales was emotionally devastated by the loss of her belongings. She did not leave her room for a week after hearing the news. She went to her office supply store on February 12 but hid in the back room crying. She left the business that day and never returned. She eventually filed for bankruptcy.

Gonzales stopped participating in community events, and the 1992 debutante ball for the Maria Clara de Pilipinas Sorority was canceled because Gonzales could not function. Gonzales was treated by a therapist from February 1992 to August 1992. The therapist diagnosed Gonzales as suffering from depression which was unresolved when Gonzales stopped treatment in August 1992.

The therapist saw Gonzales again in 1994 and again diagnosed her as suffering from depression. The therapist noted Gonzales continued to experience weight gain, withdrawal from friends, family and activities, sleep disruption, uncontrollable crying and difficulty leaving home.

## II

### PROCEDURAL HISTORY

Gonzales filed a complaint against Personal Storage in which she alleged claims for breach of contract, breach of warranty, breach of the implied covenant of good faith and fair dealing, negligence and conversion. Personal Storage filed an answer and a cross-complaint by which it asked that exculpatory provisions in its lease be enforced.

The trial court conducted a bifurcated trial in which Gonzales's claims against Personal Storage were heard by a jury and thereafter Personal Storage's cross-complaint was determined by the trial court.

At the close of evidence in the trial of Gonzales's claims, the trial court directed a verdict in her favor as to Personal Storage's liability for negligence, violation of the California Self-Storage Facility Act and conversion. The court found that as a matter of law Personal Storage had no right in January 1992 to take possession of or attempt to sell Gonzales's property without again providing her the preliminary lien and notice of lien sale required by the California Self-Storage Facility Act.

The jury returned a verdict finding that Personal Storage had breached its contract with Gonzales, causing her $59,559 in damage; the jury found that she had suffered $59,559 in property damage as a result of Personal Storage's negligence and $232,582 in emotional distress damages. The jury also awarded Gonzales $87,466 in damages for conversion; unlike the damages for negligence the conversion damages included interest and time expended in attempting to recover the lost goods.

The trial court then heard Personal Storage's cross-complaint and dismissed it. The trial court found that in light of Personal Storage's violation of the California Self-Storage Facility Act, the exculpatory clauses in its lease were unenforceable.[2]

Following entry of the verdict in her favor, Gonzales moved to recover her attorney fees under the provisions of an attorney fee clause in Personal Storage's lease. The trial court denied her motion.

## III

### ISSUES ON APPEAL

On appeal the only issue Personal Storage raises is its contention the jury should not have been permitted to award Gonzales damages for her emotional distress.

---

[2]Personal Storage has not challenged and hence we have not considered the propriety of the trial court's ruling on the enforceability of the exculpatory clauses.

By way of her cross-appeal, Gonzales contends the trial court erred in denying her attorney fee claim.

IV

DISCUSSION

A. *Emotional Distress Damages*

■ "Damages for emotional distress have been permitted only where there is some means for assuring the validity of the claim. [Citation.] The case law reveals a diversity of circumstances in which recovery for emotional distress may be had. They are loosely linked in the sense that in each it could be said that a particular form of mental suffering naturally ensued from the acts constituting the invasion of another kind of protected interest. 'The commonest example . . . is probably where the plaintiff suffers personal injuries in addition to mental distress as a result of negligent or intentional misconduct by the defendant.' [Citation.] Pain and suffering is the natural concomitant of a personal injury. [Citation.] '[I]n the case of many torts, such as assault, battery, false imprisonment, and defamation, mental suffering will frequently constitute the principal element of damages.' [Citations.] *Molien* [v. *Kaiser Foundation Hospitals* (1980)] 27 Cal.3d 916 [167 Cal.Rptr. 831, 616 P.2d 813, 16 A.L.R.4th 518], found sufficient assurance of the validity of a claim of emotional distress in the nature of the cause of action for negligent misdiagnosis, predicated as it was upon a false imputation of syphilis, which by statute constitutes slander per se, an intentional tort. [Citation.] In torts involving extreme and outrageous intentional invasions of mental and emotional tranquillity, the outrageous conduct affords the necessary assurance of the validity of the claim. [Citation.] Recovery also has been sanctioned for emotional distress which could be said naturally to ensue from an act which invaded an interest protected by an established tort. (See, *Sloane* v. *Southern Cal. Ry. Co.* [(1896)] 111 Cal. 668 [44 P. 320] [humiliation from wrongful ejection from train]; *State Rubbish etc. Assoc.* v. *Siliznoff* [(1952)] 38 Cal.2d 330 [240 P.2d 282] [intentional infliction of emotional distress]; *Crisci* v. *Security Ins. Co.* [(1967)] 66 Cal.2d 425 [58 Cal.Rptr. 13, 426 P.2d 173] [physical injuries and psychosis resulting from fall through opening]; see also *Acadia, California, Ltd.* v. *Herbert* (1960) 54 Cal.2d 328, 337 [5 Cal.Rptr. 686, 353 P.2d 294] [mental suffering occasioned by fear for safety of family caused by trespass]; *Kornoff* v. *Kingsburg Cotton Oil Co.* (1955) 45 Cal.2d 265, 271 [288 P.2d 507] [discomfort and annoyance caused by nuisance]; *Herzog* v. *Grosso* (1953) 41 Cal.2d 219, 225 [259 P.2d 429] [annoyance ensuing from trespass].)" (*Merenda* v. *Superior Court* (1992) 3 Cal.App.4th 1, 8-9 [4 Cal.Rptr.2d 87].)

■ Of the torts which will support an award of emotional distress damages, negligence has received most, if not all, of the attention of our courts over the last decade. In particular, appellate decisions have focused on the distinction between the "bystander" theory and the "direct victim" theory in negligence cases. (*Burgess* v. *Superior Court* (1992) 2 Cal.4th 1064, 1072 [9 Cal.Rptr.2d 615, 831 P.2d 1197].) "The distinction between the 'bystander' and 'direct victim' cases is found in the source of the duty owed by the defendant to the plaintiff. The 'bystander' cases, commencing with *Dillon* v. *Legg* (1968) 68 Cal.2d 728 [69 Cal.Rptr. 72, 441 P.2d 912], and culminating in *Thing* [v. *La Chusa* (1989)] 48 Cal.3d 644 [257 Cal.Rptr. 865, 771 P.2d 814], address 'the question of duty in circumstances in which a plaintiff seeks to recover damages as a percipient witness to the injury of another.' [Citation.] These cases 'all arise in the context of physical injury or emotional distress caused by the negligent conduct of a defendant *with whom the plaintiff had no preexisting relationship, and to whom the defendant had not previously assumed a duty of care beyond that owed to the public in general.*' [Citation.] In other words, bystander liability is premised upon a defendant's violation of a duty not to negligently cause emotional distress to people who observe conduct which causes harm to another.

"Because in such cases the class of potential plaintiffs could be limitless, resulting in the imposition of liability out of all proportion to the culpability of the defendant, this court has circumscribed the class of bystanders to whom a defendant owes a duty to avoid negligently inflicting emotional distress. These limits are set forth in *Thing* as follows: 'In the absence of physical injury or impact to the plaintiff himself, damages for emotional distress should be recoverable only if the plaintiff: (1) is closely related to the injury victim, (2) is present at the scene of the injury-producing event at the time it occurs and is then aware that it is causing injury to the victim and (3) as a result suffers emotional distress beyond that which would be anticipated in a disinterested witness.' [Citation.]

"In contrast, the label 'direct victim' arose to distinguish cases in which damages for serious emotional distress are sought as a result of a breach of duty owed the plaintiff that is 'assumed by the defendant or imposed on the defendant as a matter of law, or that arises out of a relationship between the two.' [Citation.] In these cases, the limits set forth in *Thing*, *supra*, 48 Cal.3d 644, have no direct application. [Citations.] Rather, well-settled principles of negligence are invoked to determine whether all elements of a cause of action, including duty, are present in a given case." (*Burgess* v. *Superior Court*, *supra*, 2 Cal.4th at pp. 1072-1073, fn. omitted.)

As summarized by the court in *Potter* v. *Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965, 985 [25 Cal.Rptr.2d 550, 863 P.2d 795] (*Potter*), the

"direct victim" cases teach that ". . . unless the defendant has assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object, recovery is available only if the emotional distress arises out of the defendant's breach of some other legal duty and the emotional distress is proximately caused by that breach of duty. Even then, with rare exceptions, a breach of the duty must threaten physical injury, not simply damage to property or financial interests. [Citations.]" Thus, courts have refused to permit the victims of attorney malpractice to recover emotional distress damages (*Smith* v. *Superior* Court (1992) 10 Cal.App.4th 1033, 1039 [13 Cal.Rptr.2d 133]; *Merenda* v. *Superior Court, supra,* 3 Cal.App.4th at pp. 9-11), except where the attorney was retained to prevent the plaintiff from being incarcerated. (*Holliday* v. *Jones* (1989) 215 Cal.App.3d 102, 114-115 [264 Cal.Rptr. 448].) Moreover, because a pharmacist's contractual relationship with parents does not include protecting parents from physical harm, a pharmacist may not be held liable for the emotional distress suffered by parents who, following instructions provided by the pharmacist, give their child an overdose of a prescription medicine. (*Huggins* v. *Longs Drug Stores California, Inc.* (1993) 6 Cal.4th 124, 133 [24 Cal.Rptr.2d 587, 862 P.2d 148].) As the court in *Huggins* noted: " '[T]he simple existence of a contract between a parent and a medical caregiver to provide medical treatment for a child is not in itself sufficient to impose on the caregiver a duty of care owed to the parent.' " (6 Cal.4th at p. 131.)

 Because Gonzales did not suffer any physical injury or impact and did not observe the injury of a loved one, Personal Storage's negligence will support an award of emotional distress damages only if Gonzales fits within the rubric of a "direct victim." However, Personal Storage argues that its landlord-tenant relationship with Gonzales did not give rise to any duty to protect Gonzales's emotional tranquillity or physical safety. Indeed, we note that under the terms of the lease Gonzales signed, Personal Storage repeatedly attempted to limit its liability for negligence and the trial court itself found that nothing in the conversation Gonzales had with Personal Storage's employees at the time the lease was signed gave rise to an undertaking by Personal Storage to protect Gonzales from emotional distress. (Cf. *Windeler* v. *Scheers Jewelers* (1970) 8 Cal.App.3d 844, 851 [88 Cal.Rptr. 39].) Moreover, we must also agree that Personal Storage's duty to protect Gonzales's property, whether limited by the terms of the lease or not, did not include a duty to protect Gonzales from emotional distress or physical harm as required by *Potter, supra,* 6 Cal.4th 965.[3]

Thus, were Gonzales's claims solely for negligence, we would be inclined to agree with Personal Storage that she cannot recover damages for her

---

[3] We note that in addition to *Potter,* Personal Storage also relies on *Cooper* v. *Superior Court* (1984) 153 Cal.App.3d 1008, 1012-1013 [200 Cal.Rptr. 746] (*Cooper*). In *Cooper* the defendants had negligently permitted a tractor to roll into the plaintiff's home. In rejecting the

emotional distress. However, the limits imposed with respect to recovery for emotional distress caused by a defendant's negligence do not apply when distress is the result of a defendant's commission of the distinct torts of trespass, nuisance or conversion. ■ Indeed, with respect to trespass, the law is clear that ". . . damages may be recovered for annoyance and distress, including mental anguish, proximately caused by a trespass." (*Armitage* v. *Decker* (1990) 218 Cal.App.3d 887, 905 [267 Cal.Rptr. 399].) Thus the plaintiffs in *Armitage* v. *Decker* were allowed to recover for distress they suffered "as a result of having their property line buried under large amounts of dirt, making it appear that one side of their property abuts a quarry, after having spent a long time looking for the best piece of property they could afford. The evidence also supported a conclusion that the [plaintiffs] suffered distress due to the spillage of dirt onto their property and the threat of interference with drainage on their property, as well as concern over appellant's operation of the bulldozer on the berm." (*Id.* at pp. 905-906.)

■ Importantly, emotional distress damages were also apparently permitted as part of a conversion claim in *Schroeder* v. *Auto Driveway Co.* (1974) 11 Cal.3d 908, 921 [114 Cal.Rptr. 622, 523 P.2d 662] (*Schroeder*). In *Schroeder* the plaintiffs were an elderly couple who had decided to move from Phoenix, Arizona, to Susanville, California. Over the course of seven or eight years, Mrs. Schroeder had accumulated approximately $20,000 in new and secondhand goods which she planned to sell in a store she hoped to open in Susanville. In August 1971 the Schroeders bought a van and loaded Mrs. Schroeder's merchandise into it. Shortly thereafter the Schroeders contracted with a company which supplied a driver for the van.

On the trip to Susanville, the driver supplied by the defendant took a detour to see the Grand Canyon and in the course of doing so skidded off a mountain highway. The van was destroyed and many of its contents were damaged. The defendant towed the van to Flagstaff and left the contents covered by a polyethleyne sheet. When the contents of the van were eventually recovered by the Schroeders in February 1972, many of the items were missing and much of what they received was broken, wet and mildewed.

The Schroeders sued the company which supplied the driver for breach of contract, fraud and conversion. The jury returned a verdict in favor of Mrs.

---

plaintiff's claim for emotional distress damages, the court stated: "No California case has allowed recovery for emotional distress arising solely out of property damage, absent a threshold showing of some preexisting relationship or intentional tort. This case involves no preexisting relationship between the parties. Thus, we do not feel it is appropriate to extend recovery for emotional distress here." (*Cooper, supra*, 153 Cal.App.3d at p. 1012.)

Schroeder. The jury found that she had suffered $25,000 in compensatory damages and was entitled to $10,000 in punitive damages.

On appeal the court found that Mrs. Schroeder had established liability for both fraud and conversion. With respect to her compensatory damages, the court stated: "To the sum of $19,000 for loss or damage to the goods we add the other damages suffered by plaintiff Madeleine Schroeder. Plaintiffs adduced evidence that they purchased the van, totally destroyed in the accident, for $800 and that they had invested approximately $400 in new tires, emergency equipment, and sundry repairs. Plaintiffs also presented expert evidence that Mrs. Schroeder's circulatory problems were exacerbated by her distress over the accident and her frustration with Driveaway's response to her inquiries. She was hospitalized twice for angina and high blood pressure, and incurred medical expenses of $1,214.85.

"The foregoing items of damages total $21,414.85. *In addition to that figure, Mrs. Schroeder is entitled to compensation for pain, suffering, and emotional distress.* Consequently the jury award of $25,000 for compensatory damages falls well within that permitted by the evidence." (*Schroeder, supra*, 11 Cal.3d at p. 921, italics added.)

Although we have not been able to locate any California authority other than *Schroeder* which deals directly with a claim for emotional distress growing out of the conversion of personal property, we note the Restatement Second of Torts section 927, illustration m, page 542, states that where property has been converted: "If the deprivation is the legal cause of harm to the feelings, damages may be allowable for the harm, as when the defendant intentionally deprives the plaintiff of essential household furniture, which humiliates the plaintiff, a result that the defendant should have realized would follow." (See also *Fredeen* v. *Stride* (1974) 269 Or. 369 [525 P.2d 166, 168] [veterinarian's conversion of plaintiff's dog supports emotional distress damages].)

The Restatement position is consistent with Civil Code section 3336, which permits the victim of conversion to recover "an amount sufficient to indemnify the party injured for the loss which is the natural, reasonable and proximate result of the wrongful act complained of and which a proper degree of prudence on his part would not have averted."

In this regard it is also important to recognize that negligent damage to personal property, for which the law generally will not permit recovery of emotional distress damages (see *Cooper, supra*, 153 Cal.App.3d at pp. 1012-1013), is distinct from the conversion of personal property. ■ " 'The foundation for the action of conversion rests neither in the knowledge nor the intent of the defendant. It rests upon the unwarranted interference by defendant with the dominion over the property of the plaintiff from which the injury to the latter results. Therefore, neither good nor bad faith, neither

care nor negligence, neither knowledge nor ignorance, are of the gist of the action.' [Citations.]" (5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 624, p. 718, quoting *Poggi* v. *Scott* (1914) 167 Cal. 372, 375 [139 P. 815].) Thus, where a warehouseman delivers stored household goods to a corporation which appears to have a bona fide claim of ownership, the warehouseman will be liable for conversion if the corporation is eventually unable to establish its title. (*Byer* v. *Canadian Bank of Commerce* (1937) 8 Cal.2d 297, 300 [65 P.2d 67], citing *Smith* v. *Miller* (1935) 5 Cal.App.2d 564, 572 [43 P.2d 347].) The liability of the warehouseman for conversion arises even though there is no element of negligence involved. (8 Cal.2d at p. 300.) However, if delivery by a bailee is impossible "because the goods have been lost or destroyed, either without fault on the part of the bailee or merely because of his negligence, there is no conversion. Negligence in caring for the goods *is not an act of dominion* over them such as is necessary to make the bailee liable as a converter." (*George* v. *Bekins Van & Storage Co.* (1949) 33 Cal.2d 834, 838 [205 P.2d 1037].) Thus a warehouseman's negligence in causing a fire which destroyed the plaintiffs' goods will not support a conversion claim. (*Ibid.*)

The act of dominion over the property of another which is necessary for conversion is important to consider here because it will invariably provide the converter with very direct knowledge of the likely consequences of such interference. For instance, where a converter takes possession and disposes of household goods or family heirlooms on the basis of a reasonable but erroneous belief as to title, the converter may legitimately contend that he acted without knowledge as to rightful ownership. However, the converter cannot claim he was unaware of the potential emotional harm his interference would cause. In contrast, the negligent destroyer of personal property—the defendant who fails to properly secure the bulldozer or the warehouseman who leaves paint rags next to a gas burner—has considerably less direct knowledge of the emotional consequences of his conduct. (See *Thing* v. *La Chusa* (1989) 48 Cal.3d 644, 647 [257 Cal.Rptr. 865, 771 P.2d 814]; *Cooper, supra,* 153 Cal.App.3d at p. 1012.) Thus, in the context of a conversion claim there is far less likelihood that allowing recovery for emotional distress damages will create liability which is out of proportion to the nature of the defendant's act. It follows that when a defendant is guilty of conversion, there is considerably less justification for imposing the limits on emotional distress damages which exist in negligence cases, such as *Cooper*.

In sum then, we conclude that notwithstanding further developments in the law of negligence, damages for emotional distress growing out of a defendant's conversion of personal property are recoverable.

B. *Trial Court's Instruction*

The only difficulty we have in affirming the jury's award of emotional distress damages is that no instruction was given which permitted

the jury to award emotional distress damages as an element of Gonzales's conversion claim. In instructing the jury, the trial court permitted an award of emotional distress damages only as an element of Gonzales's negligence claim. As our previous discussion suggests, this was an error. Because the nature of Personal Storage's relationship with Gonzales did not involve protection from emotional or physical harm, Personal Storage's negligence in discharging its duties could not give rise to liability for emotional distress damages. (*Potter*, *supra*, 6 Cal.4th at p. 985.)

However, in the particular context of this case, the trial court's error in including emotional distress damages as an element of the negligence case and failing to allow them on the conversion claim was not prejudicial. (See *Soule* v. *General Motors Corp.* (1994) 8 Cal.4th 548, 574 [34 Cal.Rptr.2d 607, 882 P.2d 298].) ██ "Instructional error in a civil case is prejudicial 'where it seems probable' that the error 'prejudicially affected the verdict.' [Citations.] Of course, that determination depends heavily on the particular nature of the error, including its natural and probable effect on a party's ability to place his full case before the jury. [¶] But the analysis cannot stop there. Actual prejudice must be assessed in the context of the individual trial record. . . . Thus, when deciding whether an error of instructional omission was prejudicial, the court must also evaluate (1) the state of the evidence, (2) the effect of other instructions, (3) the effect of counsel's arguments, and (4) any indications by the jury itself that it was misled." (*Id.* at pp. 580-581, fn. omitted.)

██ Here, the evidence was undisputed that Gonzales's severe emotional distress was caused by the loss of her treasured personal belongings. Importantly, the trial court found as a matter of law that Personal Storage had converted those belongings and Personal Storage does not dispute that ruling on appeal. The jury in turn found that the conversion, as opposed to the negligence, caused the total loss of the belongings plus additional damages. Given this record we cannot conclude that had the jury been instructed that emotional distress damages were permitted as an element of conversion, rather than negligence, it would have made a smaller emotional distress award. Thus the emotional distress portion of the judgment cannot be disturbed.

### C. Attorney Fees

██ The contract Gonzales signed at the time she rented the storage space contained an attorney fees provision which in part stated: "In the event of any legal action or proceeding between the parties hereto, reasonable attorney's fees and expenses of the prevailing party in any such action or proceeding may be added to the judgment therein."

In moving for attorney fees, Gonzales asked that she be awarded either the amount she would be required to pay her attorney under the terms of their contingency fee agreement, $112,000, or the $69,000 in fees her attorney would have charged her on an hourly basis. The trial court denied her motion. In its order the trial court stated: "The attorney's fees provision of the lease provides reasonable attorney's fees and expenses 'may' be added to the judgment. As such, the award of fees and expenses is discretionary. Taking into consideration the entirety of this action and the fact that the Plaintiff had a contingent fee arrangement with her attorney, the Court finds that increasing the judgment to include fees and non-recoverable costs is not warranted." On appeal Gonzales argues the trial court abused its discretion in denying in its entirety her request for attorney fees. We agree.

Gonzales concedes that under the particular terms of Personal Storage's lease, an award of attorney fees is a matter within the sound discretion of the trial court and absent abuse of discretion the determination of the trial court cannot be disturbed. (See *Erich* v. *Granoff* (1980) 109 Cal.App.3d 920, 931 [167 Cal.Rptr. 538]; *Bussey* v. *Affleck* (1990) 225 Cal.App.3d 1162, 1165 [275 Cal.Rptr. 646].) ▮ A trial court's exercise of discretion is abused only when its ruling " 'exceeds the bounds of reason, all of the circumstances before it being considered.' " (*Denham* v. *Superior Court* (1970) 2 Cal.3d 557, 566 [86 Cal.Rptr. 65, 468 P.2d 193].) Nonetheless " ' "[t]he discretion of a trial judge is not a whimsical, uncontrolled power, but a legal discretion, which is subject to the limitations of legal principles governing the subject of its action, and to reversal on appeal where no reasonable basis for the action is shown. [Citation.]" ' [Citations.] The scope of discretion always resides in the particular law being applied, i.e., in the 'legal principles governing the subject of [the] action.' " (*City of Sacramento* v. *Drew* (1989) 207 Cal.App.3d 1287, 1297 [255 Cal.Rptr. 704].)

▮ Here the trial court erred in relying, at least in part, on the fact that under her contingent fee agreement with her counsel Gonzales would not have been liable for any attorney fees if her claim had been unsuccessful. In *Wiener* v. *Van Winkle* (1969) 273 Cal.App.2d 774 [78 Cal.Rptr. 761], a trial court adopted similar reasoning in denying attorney fees to successful plaintiffs who had retained counsel on a contingent fee basis. The plaintiffs had sought the fees on a promissory note which permitted the prevailing party to recover " 'such sum as the Court may fix as attorneys' fees.' " (*Id.* at p. 787.) In reversing the trial court, the Court of Appeal stated: "The trial court found that the Wieners did not incur attorney's fees and concluded that the Van Winkles therefore had no obligation to pay such fees. This finding is incorrect. The purpose of upholding an attorney's fees provision in a promissory note is to allow a plaintiff to recover the full amount due him

without such amount being diminished by attorney's fees. In *Bank of Woodland* v. *Treadwell*, 55 Cal. 379, 380, our Supreme Court held: 'The object of the law allowing counsel fees is not to afford an opportunity, under the cover of the name, for a speculation on the part of the creditor, but to reimburse him, in a proper amount, for a sum which he pays, or becomes liable to pay, *or to relieve him of the burden of paying counsel fees*.' . . . In the present case, the agreement between the Wieners and their counsel was quite clearly within the scope and purpose of the law allowing attorney's fees. The promissory note does not require that the Wieners 'incur' attorney's fees; rather, it provides that the Van Winkles will pay 'such sum as the Court may fix as attorneys' fees.' To deny the Wieners such fees where the Van Winkles clearly defaulted in their obligation would deprive the Wieners of the benefit of their agreement." (*Id.* at pp. 788-789.)

The reasoning employed by the court in *Wiener* v. *Van Winkle* is fully applicable here. Personal Storage's lease agreement permits recovery of reasonable attorney fees in an action between the parties; the lease does not require that the fees be *incurred* by the prevailing party. Indeed, an interpretation which bars recovery to parties who have contingent fee agreements would create a great deal of inequity because although a party with a contingent fee agreement would be exposed to the risk of paying fees incurred by an opponent, he would have no opportunity to recover any portion of the fees he would in fact be required to pay if he were successful. Such disparity of treatment is to be avoided in interpreting and applying attorney fees provisions. (See *International Industries, Inc.* v. *Olen* (1978) 21 Cal.3d 218, 224 [145 Cal.Rptr. 691, 577 P.2d 1031].)

We note that in denying Gonzales's request for attorney fees, the trial court appeared to also rely on the fact that in addition to her out-of-pocket losses Gonzales was awarded a substantial sum in tort damages for her emotional suffering. However, unlike attorney fees available under Civil Code section 1717, the attorney fees provision in Personal Storage's lease agreement is not restricted to contract actions. By its terms it applies to *"any legal action."* Agreements which contain such broad language permit the recovery of attorney fees in tort as well as contract actions. (See *Xuereb* v. *Marcus & Millichap, Inc.* (1992) 3 Cal.App.4th 1338, 1340 [5 Cal.Rptr.2d 154]; *Honey Baked Hams, Inc.* v. *Dickens* (1995) 37 Cal.App.4th 421, 425 [43 Cal.Rptr.2d 595]; *Palmer* v. *Shawback* (1993) 17 Cal.App.4th 296, 299 [21 Cal.Rptr.2d 575]; *Lerner* v. *Ward* (1993) 13 Cal.App.4th 155, 160-161 [16 Cal.Rptr.2d 486].) Because the attorney fee clause in the lease expressly permitted recovery to either party in the event of a tort action, Gonzales cannot be denied recovery of attorney fees solely because she was successful in the tort portions of her lawsuit.

We have examined the record for any other circumstance which would justify an order denying attorney fees and we have found none. In particular, we note that Gonzales was successful as a matter of law on her liability claims and largely successful on her contentions with respect to damages. Thus, this is not a case where it can be said both parties were partially successful and therefore, notwithstanding a fee agreement, no fee award would be appropriate. (See *Hsu* v. *Abbara* (1995) 9 Cal.4th 863, 875-877 [39 Cal.Rptr.2d 824, 891 P.2d 804] [interpreting discretion to find no prevailing party under Civil Code section 1717, subdivision (b)(1)].) Rather, the trial court's judgment was an unqualified victory for Gonzales.

Thus, the order denying Gonzales's motion for attorney fees is reversed, and the trial court is directed to make an award of reasonable attorney fees to Gonzales, including fees incurred on appeal. In all other respects the judgment is affirmed.

Huffman, J., and Nares, J., concurred.

A petition for a rehearing was denied August 7, 1997, and the opinion was modified to read as printed above. The petition of appellant Personal Storage, Inc. for review by the Supreme Court was denied November 12, 1997. Kennard, J., and Chin, J., were of the opinion that the petition should be granted.