**Gary KREMEN, et al., Plaintiffs,**

v.

**Stephen Michael COHEN, et al., Defendants.**

**No. C 98–20718 JW.**

United States District Court, N.D. California.

May 30, 2000.

Richard S. Diestel, Beldsoe, Cathcart, Diestel, Livingston & Pedersen, San Francisco, CA, Charles H. Carreon, Medford, OR, James M. Wagstaffe, Pamela Urueta, Kerr & Wagstaffe, San Francisco, CA, for Gary Kremen.

Joel Dichter, Campeau & Thomas, San Jose, CA, Kathryn L. Diemer, San Jose, CA, Sheri Lynn Falco, Law Offices of Sheri L. Falco, San Francisco, CA, Sean Moynihan, Klein Zelman Rothermel & Dichter, New York City, for Online Classifiers, Inc.

Robert Selvidge, Duboff & Ross, San Francisco, CA, Steven G. Ross, Duboff & Ross, Porland, OR, Robert S. Dorband, Duboth & Ross, Hampton Oaks, Portland, OR, for Steven Michael Cohen, Ocean Fund International Ltd., Sand Man International Limited.

David Henry Dolkas, Gray Cary Ware & Friedenrich, Palo Alto, CA, Philip L. Sbarbaro, Hanson and Malloy, Washington, DC, for Network Solutions, Inc.

## ORDER GRANTING DEFENDANT NETWORK SOLUTION, INC.'S MOTION FOR SUMMARY JUDGMENT

WARE, District Judge.

### I. *INTRODUCTION*

Defendant Network Solutions, Inc., ("NSI") filed a motion for summary judgment and noticed it for hearing on January 24, 2000. In response, Plaintiff Gary Kremen filed a motion pursuant to Federal Rule of Civil Procedure 56(f). The Court granted the Rule 56(f) motion in part, permitting Plaintiff to conduct further discovery and allowing the parties to submit supplemental briefing. Based upon all papers filed to date and the oral argument of counsel, the Court grants Defendant's motion for summary judgment.

### II. *FACTUAL BACKGROUND*

Plaintiff Gary Kremen registered the domain name sex.com with NSI on May 9, 1994. Plaintiff identified Online Classified, Inc. ("Online Classified") as the registering organization.[1] Plaintiff never constructed a Web site or otherwise commercially exploited the domain name. In a letter dated October 15, 1995, Sharon Dimmick, purportedly on behalf of Online Classified, informed Defendant Stephen Cohen that Online Classified had "decided to *abandon* the domain name sex.com" and requested that Mr. Cohen "notify the internet registration on our behalf, to delete [their] domain name sex.com." Graves Decl.Ex. C. It further stated that "we have no objection to your use of the domain name sex.com and this letter shall serve as our authorization to the internet registration to transfer sex.com to your corporation." *Id.* The letter was on Online Classified letterhead and was signed by Ms. Dimmick, who represented herself as the President of the company. Shortly thereafter, Mr. Cohen registered sex.com in the name of a company he operated.

Plaintiff contends that the October 15, 1995 letter is a forgery by Mr. Cohen. On October 16, 1998, Plaintiff filed suit against numerous defendants, including NSI, for its deletion of the domain name. Plaintiff alleges the following causes of action against NSI: (1) breach of contract, (2) breach of intended third-party beneficiary contract, (3) breach of fiduciary duty, (4) negligent misrepresentation, (5) conspiracy

---

**1.** For a thorough discussion of the registration process during the period at issue here, see *Oppedahl & Larson v. Network Solutions,* *Inc.,* 3 F.Supp.2d 1147, 1149–50 (D.Colo. 1998).

to convert property and (6) conversion of bailee. NSI now moves for summary judgment as to all claims against it.

### III.  LEGAL STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If he meets this burden, the moving party is then entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of his case with respect to that which he bears the burden of proof at trial. *See id.* at 322–23, 106 S.Ct. 2548. To defeat summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The facts brought forth must be material, i.e., "facts that might affect the outcome of the suit under the governing law.... Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

It is the court's responsibility "to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W. Elec. Service v. Pacific Elec. Contractors*, 809 F.2d 626, 631 (9th Cir.1987). "[S]ummary judgment will

not lie if the dispute about a material fact is 'genuine,' that is if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### IV.  ANALYSIS

#### A.  Breach of Contract

A party must prove the following to establish a claim for breach of contract: the existence and terms of the contract, plaintiff's performance, defendant's breach, and damages. *See Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 633 (S.D.Cal.1998). The essential elements required to demonstrate the existence of a contract are: "(1) parties capable of contracting, (2) their consent, (3) a lawful object, and (4) a sufficient cause or consideration." Cal.Civ.Code § 1550. "Consideration is a benefit conferred or agreed to be conferred upon the promisor or prejudice suffered or agreed to be suffered 'as an inducement' to the promisor." *Conservatorship of O'Connor*, 48 Cal.App.4th 1076, 56 Cal.Rptr.2d 386 (1996); *see also* Cal.Civ.Code § 1605.

■ Plaintiff contends NSI breached the contract governing Kremen's registration of the domain name sex.com. Plaintiff registered the domain name on May 4, 1994. In 1994, the registration process involved completing a short administrative template which was then submitted to NSI via e-mail. *See* Graves Decl. ¶ 20. At that time, NSI received no registration fee or other form of payment from registrants in exchange for the service. *See id.* at ¶ 5. Thus, the registration form is not supported by consideration because there was no benefit conferred or agreed to be con-

ferred upon NSI. *See Oppedahl & Larson v. Network Solutions, Inc.,* 3 F.Supp.2d 1147, 1160 (D.Colo.1998) (holding that the registration forms used in 1994 by NSI lacked consideration). Accordingly, Plaintiff's motion for summary judgment as to the breach of contract claim is granted because Plaintiff has failed to demonstrate an essential element of the claim—the existence of a contract.

### B. Breach of Intended Third–Party Beneficiary Contract

NSI became the registrar of domain names pursuant to a Cooperative Agreement with the United States Government. *See* 31 U.S.C. § 6305. National Science Foundation ("NSF") administered the agreement on behalf of the federal government. Plaintiff contends that domain registrants are third-party beneficiaries of the government's contract with NSI. Thus, NSI's failure to comply with certain obligations under the agreement constitutes breach of a third-party beneficiary contract.

■■■ Interpretation of the Cooperative Agreement is governed by federal law because the "contract was entered into pursuant to authority conferred by federal statute." *United States v. Seckinger,* 397 U.S. 203, 209–210, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970). In determining whether a party is a third-party beneficiary, Ninth Circuit law provides as follows:

> To sue as a third-party beneficiary of a contract, the third party must show that the contract reflects the express or implied intention of the parties to the contract to benefit the third party. *See Montana v. United States,* 124 F.3d 1269, 1273 (Fed.Cir.1997). The intended beneficiary need not be specifically or individually identified in the contract, but must fall within a class clearly intended by the parties to benefit from the contract. *See id.*

*Klamath Water Users Protective Ass'n v. Patterson,* 204 F.3d 1206, 1211 (9th Cir. 1999). Moreover, "[p]arties that benefit from a government contract are generally assumed to be incidental beneficiaries, and may not enforce the contract absent a clear intent to the contrary." *Id.* (citing Restatement (Second) of Contracts § 313(2) (1979)).

■■ Plaintiff points to Article 6, titled "Responsibilities," as reflective of NSI and the NSF's intent to benefit domain name registrants. Article 6 contains numerous provisions outlining the respective duties of NSI and the NSF under the contract. However, it contains no language manifesting a clear intent to confer anything but an incidental benefit to domain name registrants. Based upon Plaintiff's failure to adduce any evidence creating an issue of triable fact regarding its status as an intended beneficiary under the Cooperative Agreement, Defendant's motion for summary judgment as to the breach of a third party beneficiary claim is granted. *See Oppedahl & Larson v. Network Solutions, Inc.,* 3 F.Supp.2d 1147, 1159 (D.Colo.1998) (finding domain name registrant was not a third-party beneficiary of the Cooperative Agreement between NSI and the NSF).

### C. Conversion and Conspiracy to Convert Property

■■ The elements of conversion are as follows: (1) the plaintiff has ownership or right to possession of the property at the time of the conversion; (2) the defendant's conversion is by a wrongful act or disposition of property rights; and (3) damages. *See Farmers Ins. Exch. v. Zerin,* 53 Cal. App.4th 445, 451, 61 Cal.Rptr.2d 707 (1997). Historically, the tort of conversion was confined to tangible property. *See* 5 Witkin, *Summary of California Law,* Torts § 613 (9th ed.1988). However, California law does recognize "conversion of intangibles *represented by documents,* such as a bonds, notes, bills of exchange, stock certificates, and warehouse receipts." *Id.* Intangible property such as "goodwill of business, trade secrets, a newspaper route, or a laundry list of customers" are

not subject to conversion. *Id.* In *Berger v. Hanlon,* 129 F.3d 505, 517 (9th Cir.1997) (citing Restatement (Second) of Torts, § 242 and comments), the Ninth Circuit noted that "[a]lthough the common law rule has been relaxed somewhat, and the tort may now reach the misappropriation of intangible rights customarily merged in or identified with some document, it has not yet been extended further." ·

■ NSI contends that a domain name is a form of intangible property which can not serve as a basis for a conversion claim. The Court concurs. There is simply no evidence establishing that a domain name, including sex.com, is "merged in or identified with" a document or other tangible object. Thus, under the traditional precepts governing the tort of conversion, a domain name is not protected intangible property.[2]

The Court recognizes that the present action invites abandoning the traditional strictures of conversion to encompass forms of intangible property never contemplated in its formation. However, this Court heeds the California Supreme Court's admonitions to exercise restraint in imposing " '[new tort duties] when to do so would involve complex policy decisions,' (citation omitted) especially when such decisions are more appropriately the subject of legislative deliberation and resolution." *Moore v. Regents of University of California,* 51 Cal.3d 120, 136, 271 Cal.Rptr. 146, 793 P.2d 479 (1990) (citing *Foley v. Interactive Data Corp.,* 47 Cal.3d 654, 694 & fn. 31, 254 Cal.Rptr. 211, 765 P.2d 373 (1988)). In considering the propriety of extending the law of conversion the Court finds numerous issues "more appropriately the subject of legislative deliberation and resolution." *Id.*

The Court shall limit it discussion to three issues of particular concern. The first concern is the strict liability nature of conversion. *See Moore v. Regents of California,* 51 Cal.3d 120, 144, 271 Cal.Rptr. 146, 793 P.2d 479 (1990). "The foundation of the action rests neither in the knowledge nor intent of the defendant.... Therefore, questions of the defendant's

---

2. In determining the proper characterization of a domain name the Court considered both the Ninth Circuit's decision in *Lockheed Martin Corp. v. Network Solutions, Inc.,* 194 F.3d 980 (9th Cir.1999), which was heavily relied upon by Defendant in its moving papers, and the Virginia Supreme Court's recent ruling in *Network Solutions, Inc. v. Umbro International, Inc.,* 529 S.E.2d 80 (Va.2000). While both cases are relevant to the issues raised in the present action, the Court finds them ultimately inapplicable.

In *Lockheed,* Plaintiff Lockheed Martin registered a service mark in the phrase "Skunk Works." Lockheed sued NSI for trademark infringement, arguing that NSI diluted its service mark by permitting third parties to register variations of the phrase "Skunk Works." The Court held that NSI's function did not subject it to liability for contributory infringement of a trademark because it merely provides a service, not a product. *Id.* at 984–85. Thus, unlike the present action, in *Lockheed* the focus was on NSI's role, rather than the proper classification of a domain name.

The *Umbro* case is more superficially appealing. In *Umbro,* a judgment creditor sought to garnish numerous domain names from a judgment debtor. The lower court held that the domain names were valuable intellectual property subject to garnishment. The Virginia Supreme Court reversed the lower court's decision, holding that domain names were not garnishable because the right to their use "is inextricably bound to the domain name services NSI provides." *Network Solutions, Inc. v. Umbro International, Inc.,* 529 S.E.2d 80, 86 (Va.2000). The court was concerned that "[i]f we allow the garnishment of NSI's services in this case because those services create a contractual right to use a domain name, we believe that practically any service would be garnishable." *Id.*

The Court declines to adopt the reasoning in *Umbro* on two grounds. First, the circumstances in *Umbro* are distinguishable from the case at bar. There the domain names at issue were registered pursuant to a contract with NSI and more importantly the case arose in the particular context of garnishment proceedings. Second, the Virginia Court's rationale is not entirely satisfactory. The Court finds merit in the dissent's position that the right to use domain names "exists separate and apart from NSI's various services that make the domain names operational Internet addresses. These services ... are mere conditions subsequent...." *Id.* at *9.

good faith, lack of knowledge, and motive are ordinarily immaterial." *Burlesci v. Petersen,* 68 Cal.App.4th 1062, 1066, 80 Cal.Rptr.2d 704 (1998). The following example is illustrative of the tort's severity: "where a warehouseman delivers stored household goods to a corporation which appears to have a bona fide claim of ownership, the warehouseman will be liable for conversion if the corporation is eventually unable to establish its title." *Gonzales v. Personal Storage, Inc.,* 56 Cal.App.4th 464, 476, 65 Cal.Rptr.2d 473 (1997). As the warehouseman in the latter scenario, domain registrars such as NSI would be exposed to liability every time a third party fraudulently obtained the transfer of a domain name. The Court finds it inherently unjust to place NSI in this untenable position by virtue of innocently performing a purely ministerial function.[3] Furthermore, the threat of litigation threatens to stifle the registration system by requiring further regulations by NSI and potential increases in fees.

Second, the Court is reluctant to construct the proverbial slippery slope. Recognition of a domain name as convertible property would essentially scrap any requirement of tangibility traditionally associated with the tort. It is arguably arbitrary for California law to recognize conversion of intangible property merged with a document, while excluding wholly intangible property. Nevertheless, the Court is compelled to uphold this distinction rather than contort the cause of action to encompass property never contemplated. As stated by Prosser, "it would seem preferable to fashion other remedies ... to protect people from having intangible values used and appropriated in unfair ways." W. Page Keeton et al., *Prosser & Keeton on the Law of Torts* § 15, at 92 (5th ed.1984).

Third, in line with Prosser's recommendation, the Court believes there are methods better suited to regulate the vagaries of domain names. The Court leaves it to the legislature to fashion an appropriate statutory scheme to protect dormant domain names unprotected by trademark law. *See* 15 U.S.C. § 1125(d). However, it simply notes the imprudence of superimposing the archaic principles governing the tort of conversion onto the nebulous realm of the Internet.

In sum, the Court grants summary adjudication of both the conversion and conspiracy to convert property causes of action against NSI.

### D. *Conversion to Bailee*

■ "A bailment ... is the deposit of personal property with another, usually for a particular purpose, under an express or implied contract." 4 Witkin, *Summary of*

---

**3.** At the January 24, 2000 hearing, Plaintiff's counsel represented to the Court that he had information from a Lee Fuller which indicated that Mr. Cohen was able to effectuate the allegedly unauthorized transfer of sex.com due to an intimate relationship with an employee of NSI. Based upon counsel's representation, the Court granted Plaintiff additional time to conduct discovery regarding any irregularities in the transfer of the domain name. *See* Order Granting in Part *Plaintiff's Rule 56(f) Motion* at 1.

Plaintiff's opposition and supplemental briefs fail to identify a scintilla of evidence indicating that Mr. Cohen had an intimate relationship with an employee of NSI or that anyone at NSI knew the letter by Sharon Dimmick was forged. On the contrary, the evidence demonstrates that NSI had no reason to question the veracity of the letter and proceeded to transfer the domain name in the normal course of business. David Graves, who oversaw domain name registration services for NSI in October 1995 states: "At the time I approved the termination of the domain name registration, I did not know and had no reason to believe that the Dimmick/Cohen Letter was purportedly forged. I believed at the time I reviewed the letter and approved the termination of the registration services that the letter had been legitimately authored by Sharon Dimmick as the president of and on behalf of the domain name registrant, Online Classifieds, Inc." Suppl. Graves Decl. at ¶ 9. Based upon the lack of evidence indicating any misdeeds by NSI in transferring sex.com, the Court finds no reason to question its innocence in the registration process.

*California Law*, Personal Property § 129 (9th ed.1987). A deposit may be voluntary or involuntary. *See* Cal.Civ.Code § 1813. "A voluntary deposit is made by one giving to another, with his consent, the possession of personal property to keep for the benefit of the former, or of a third party." Cal.Civ.Code § 1814. Plaintiff contends his delivery of sex.com to NSI, who in turn accepted care and custody of the domain name, created a bailor/bailee relationship. Plaintiff's characterization of NSI as a bailee misconstrues NSI's function. In *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 985 (9th Cir.1999) (citation omitted), the Ninth Circuit found that NSI's role is solely to provide a service because its "involvement with the use of domain names does not extend beyond registration." NSI's mere registration of names does not convert its role to that of a bailee. Thus, the Court grants Defendant's motion for summary judgment with respect to the bailment claim.

### E. *Breach of Fiduciary Duty*

■ "A fiduciary or a confidential relationship exists whenever under the circumstances trust and confidence reasonably may be and is reposed by one person in the integrity and fidelity of another." California Jury Instructions, Civil (8th ed. 1994) No. 12.36. NSI's only function in relation to Mr. Kremen was to register his domain name. As discussed above, the registration process in 1994 only involved completing a short form and forwarding it to NSI. There were no fees associated with the registration process. Thus, the completion of the form did not even create a contractual relationship because it was not supported by any consideration. Based upon the remote nature of the parties' relationship, Mr. Kremen could not reasonably place his trust and confidence in NSI. Accordingly, the Court grants NSI's motion for summary judgment with respect to the breach of fiduciary duty claim.

### F. *Negligent Misrepresentation*

■ The elements of a negligent misrepresentation are as follows: "(1) a misrepresentation of a past or existing material fact, (2) without reasonable grounds for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) ignorance of the truth and justifiable reliance thereon by the party to whom the misrepresentation was directed, and (5) damages." *Fox v. Pollack,* 181 Cal.App.3d 954, 962, 226 Cal.Rptr. 532 (1986). To recover on a theory of negligent misrepresentation, "more than an omission is required." *Byrum v. Brand,* 219 Cal.App.3d 926, 941, 268 Cal.Rptr. 609 (1990).

■ In his complaint, Plaintiff contends "NSI represented ... that it would register and hold secure the register of domain names in a manner that would protect the property interests of the registrant...." Third Amended Complaint ¶ 105. Defendant points out that Plaintiff has failed to present any evidence of such misrepresentations. Thus, under the principles of summary judgment, the burden shifts to Plaintiff to adduce evidence in support of his claim. However, Plaintiff fails to even address the cause of action in its opposition. "If no factual showing is made in opposition to a motion for summary judgment, the district court is not required to search the record *sua sponte* for some genuine issue of material fact. It may rely entirely on the evidence designated by the moving party showing no such triable issue." Schwarzer et al., *Federal Civil Procedure Before Trial,* ¶ 14:330 (1997) (citing *Guarino v. Brookfield Township Trustees,* 980 F.2d 399, 403 (6th Cir. 1992)). Based upon the absence of evidence is support of Plaintiff's negligent misrepresentation claim, the Court grants summary judgment of the claim in favor of NSI.

### V. *CONCLUSION*

Based upon the foregoing, the Court grants Defendant NSI's motion for summary judgment. However, the Court shall

retain jurisdiction over NSI in the interests of resolving the domain name dispute between Plaintiff and the remaining parties.