In re PACIFIC GAS & ELECTRIC COMPANY, Debtor.

People of the State of California, et al., Plaintiffs,

v.

PG & E Corporation; et al., Defendants.

City and County of San Francisco, et al., Plaintiffs,

v.

PG & E Corporation, et al., Defendants.

Cynthia Behr, Plaintiff,

v.

PG & E Corporation, et al., Defendants.

Bankruptcy No. 01–30923DM.
Adversary Nos. 02–3026DM, 02–3040DM, 02–3042DM.

United States Bankruptcy Court, N.D. California.

June 14, 2002.

Robert Glynn, Jr., c/o Frederick Brown, Frederick Brown, Orrick, Herrington and Sutcliffe, San Francisco, CA, Oscar Cantu, Michael P. Kessler, Weil, Gotshal and Manges, New York City, Jennifer L. Scafe, Law Offices of Latham and Watkins, for defendants.

Danette E. Valdez, Office of Attorney General, Joseph P. Como, Dennis J. Herrera, Office of City Attorney, San Francisco, CA, Timothy K. Sprinkles, Law Offices of Collins and Schlothauer, San Jose, CA, for plaintiffs.

### MEMORANDUM DECISION ON MOTIONS TO REMAND

DENNIS MONTALI, Bankruptcy Judge.

## I. INTRODUCTION

On April 23, 2002, the court heard arguments on three motions to remand to the state court three complaints filed against PG & E Corporation ("Corporation")[1], and in two instances, against several individuals who are directors of Corporation or of debtor, Pacific Gas and Electric Company ("Debtor"). After considering the motions, the oppositions, including Debtor's Position Regarding Motions To Remand and The Automatic Stay, and the arguments of counsel, the court will remand portions of all three removed actions, for the reasons set forth below.

## II. FACTS AND PROCEDURAL HISTORY[2]

On January 10, 2002, Bill Lockyer, Attorney General of the State of California (the "AG"), filed a Complaint For Restitution, Civil Penalties, Injunction, Appointment Of Receiver, And Other Equitable And Ancillary Relief (the "AG Complaint") in the Superior Court of the State of California for the County of San Francisco (*People of the State of California, ex rel. Bill Lockyer, Attorney General of the State of California v. PG & E Corporation, et al.;* Case No. CGC-02-403289;

Adversary Proceeding No. 02-3026) (the "AG Action"). On February 2, 2002, Corporation removed the AG Action to this court by filing its Notice Of Removal Of Action.

On February 11, 2002, the City and County of San Francisco ("CCSF") and the People of the State of California, by and through San Francisco City Attorney Dennis J. Herrera, filed a Complaint For Restitution, Civil Penalties, Injunction, Appointment Of Receiver, And Other Ancillary Relief (Conversion; Unjust Enrichment; Cal. Bus. & Prof.Code § 17200—Unlawful, Unfair & Fraudulent Business Practices) in the Superior Court of the State of California for the County of San Francisco (the "CCSF Complaint") (*City and County of San Francisco; People of the State of California v. PG & E Corporation; Does 1-150;* Case No. CGC-02-404453; Adversary Proceeding No. 02-3040) (the "CCSF Action"). On March 4, 2002, Corporation removed the CCSF Action to this court by filing its Notice Of Removal Of Action.

On February 14, 2002, Cynthia Behr ("Behr") filed a Complaint For Recovery Of Claim, Set Aside Fraudulent Transfer, Conspiracy, Attachment, And/Or Levy Executed Against Assets, Damages, Restitution, Injunction, Appointment Of Receiver, And Other And Equitable And Ancillary Relief (Cal. Bus. & Prof.Code § 17200—Unlawful, Unfair & Fraudulent Business Practices; Cal. Civ.Code § 3439—Uniform Fraudulent Transfer Act; Cal. Comm. Code § 6107—Sales Act) (the "Behr Complaint") in the Superior Court of the State of California in and for the County of Santa Clara (*Cynthia Behr v. PG & E Corporation, et al.;* Case No. CV-805274;

---

1. Corporation is not a debtor in this court; rather, Corporation is the parent corporation of the debtor.

2. For purposes of the court's consideration of the three motions to remand, all of the allegations of all three complaints are deemed to be true.

Adversary Proceeding No. 02–3042) (the "Behr Action"). On March 8, 2002, Corporation removed the Behr Action to this court by filing its Notice Of Removal Of Action.[3]

Despite its lengthy title, the AG Complaint purports to assert one cause of action, viz. violation of the Unfair Competition Act, section 17200 of the California Business and Professions Code ("Section"). For the most part the AG Complaint alleges numerous events that occurred prior to April 6, 2001 (the "Petition Date"), the date the Debtor commenced its present Chapter 11 case in this court. Reducing a complex history and dozens of allegations to the simplest, the thrust of the Section 17200 theory is that Corporation has engaged in a series of events amounting to unlawful, unfair and fraudulent business acts or practices including (1) agreeing to the so-called First Priority Condition[4] while never intending to abide by it and other conditions; (2) subordinating the interests of Debtor and Debtor's ratepayers to Corporation's own interest; (3) failing to disclose to the California Public Utilities Commission (the "CPUC") its true intentions during the so-called Holding Company Proceedings;[5] (4) transferring ratepayer-funded assets from Debtor to Corporation for the benefit of Corporation and its affiliates, even while Debtor was experiencing financial distress, and without intent to infuse capital into Debtor when it needed capital to operate, in violation of the First Priority Condition and other conditions; (5) appropriating over $4 billion from revenues that Debtor had received from high frozen rates paid by ratepayers; (6) implementing "ring-fencing" transactions to protect the assets of other affiliates of Corporation from bankruptcy or credit down-grading, insuring that it would be impossible for Debtor to access such excess and impairing Corporation's ability to provide cash to Debtor, again in violation of the First Priority Condition. While the allegations go beyond those summarized by the court, for convenience they will be referred to herein as the "First Priority Claims."

The AG Complaint also alleges some events that occurred after the Petition Date. It alleges that Corporation is co-proponent of a Plan of Reorganization (the "Plan") in this court whereby Debtor will transfer assets of its electricity transmission business, its gas transmission business and its electricity generation business to entities outside of the control of the CPUC. It charges Corporation with utilizing the Plan (1) to restructure Debtor's operations without CPUC approval; (2) to remove those current operations and activities from the CPUC's jurisdiction; (3) to transfer hydro-electric generation assets for an amount far below their fair market value, without any revenue sharing mecha-

---

3. Corporation should have removed the Behr Action to the San Jose Division of this court. Fed. R. Bankr.P. 9027(a)(1). It is highly likely that removal to that division would have resulted in an intra-district transfer to this division. In any event, Behr did not object to the removal directly to this division and the court thus considers the issue waived.

4. The AG alleges that in order to obtain CPUC's approval of Debtor's application to reorganize into a holding company structure (*see* footnote 5 below), Corporation and its directors agreed that they would give "first priority" to the capital needs of Debtor as determined to be necessary and prudent to meet its obligations to serve or operate Debtor in a prudent and efficient manner. AG Complaint at ¶ 44(g).

5. On October 20, 1995, Debtor filed an application with the CPUC for approval to reorganize under a holding company structure. It proposed to implement the restructuring through a reverse triangular merger. As a result of the merger, Debtor would become the wholly owned subsidiary of Corporation. AG Complaint at ¶ 37.

nism which would entitle ratepayers to any credit for profits realized in violation of California law; (4) to burden Debtor with many of the liabilities with which it entered bankruptcy; (5) to change the ownership structure of Debtor without CPUC approval; (6) to evade compliance with the CPUC's Affiliates Rules; [6] (7) to prohibit CPUC and the State of California from taking action related to the allocation or other treatment of "gain on sale" related to assets transferred or disposed under the Plan, and (8) to prohibit Debtor from reassuming the "net open position" of its customers unless certain conditions are met. More specifically, the AG Complaint alleges that Corporation's use of Debtor's Chapter 11 bankruptcy to approve restructuring transactions and transfer assets is "unfair" (AG Complaint, ¶ 105); that through Debtor's Chapter 11 bankruptcy case, Corporation and the other individual defendants are "... continuing to engage in unlawful, unfair and fraudulent business practices ..." (AG Complaint, ¶ 113); and that "[Corporation's and the individual defendants'] continuing wrongful conduct ... will further cause great and irreparable harm to ratepayers." (AG Complaint, ¶ 115.) While the allegations go beyond those summarized by the court, for convenience they will be referred to herein as the "Plan Claims."

The CCSF Complaint sets forth three separate causes of action. The first alleges conversion, the second alleges unjust enrichment, and the third alleges violation of Section 17200. The factual allegations are similar to, but nowhere near as comprehensive as, those in the AG Complaint. For purposes of this Memorandum Decision, CCSF's Section 17200 claims are also identified as "First Priority Claims."

They do not allege any events after the Petition Date.

The conversion claim is somewhat confusing. CCSF alleges that "Corporation took at least $5.2 billion *from [Debtor]* between 1997 and 2000" and that, as a result, Debtor requested and was granted rate increases to cover shortfalls. CCSF Complaint, ¶ 43 (emphasis added). The CCSF Complaint thus concedes that the purportedly converted funds were owned and possessed by Debtor at the time of the alleged conversions. The CCSF Complaint does not allege that CCSF, citizens of San Francisco or of California, or Debtor's ratepayers (as opposed to Debtor) owned or had an immediate right of possession to the money at the time of the alleged conversion.

The unjust enrichment claim of CCSF also alleges that Corporation unlawfully took money from Debtor, leaving it with insufficient money to provide safe and reliable electric service. This resulted in CCSF and ratepayers being forced to advance additional money to Debtor in the form of rate increases. In order to avoid Corporation's unjust enrichment, CCSF asks for the imposition of a constructive trust upon money wrongfully taken by Corporation. Regardless of the different drafting approach, this claim resembles the conversion claim. It does not allege anyone other than Debtor owned the allegedly wrongfully withdrawn money.

The Behr Complaint appears to be almost a verbatim duplication of the AG Complaint, although it states four causes of action: (1) a claim under Section 17200; (2) a claim under Cal. Civ.Code § 3439, the Uniform Fraudulent Transfer Act ("Fraudulent Transfer Claim"); (3) a claim

---

**6.** In Decision D–97–12–088, the CPUC adopted affiliate transaction rules governing the relationship between California's energy utilities and their affiliates. AG Complaint at ¶ 46.

of conspiracy; and (4) a claim under California Commercial Code § 6107, the California Bulk Sales Law ("Bulk Sales Claim"). As to the last three causes of action, no new facts have been pleaded. With respect to Behr's Section 17200 claims, those based on pre-petition conduct are also identified as "First Priority Claims" and those based on post-petition, Plan-related conduct are identified as "Plan Claims".

On March 1, 2002, the AG moved to remand the AG Action to Superior Court; in the alternative he moved for abstention. On March 22, 2002, CCSF made a similar motion; on April 1, 2002, Behr made a similar motion. Corporation opposed all three motions to remand and filed motions to dismiss the three complaints under Fed. R.Civ.P. 12(b)(6), or in the alternative, sought a stay of the respective actions until the Effective Date of Debtor's Plan. Rather than consider those motions to dismiss, the court directed the parties to respond to the motions to remand. The court deferred action on the motions to dismiss until resolution of the motions to remand.

## III. ISSUES

A. Does sovereign immunity prevent the AG Action and the CCSF Action from being removed to the bankruptcy court?

B. Do the portions of the AG Action and the Behr Action raising the Plan Claims fall within the exclusive jurisdiction of the bankruptcy court?

C. Are the First Priority Claims asserted in the AG Action and the CCSF Action exempt from removal under 28 U.S.C. § 1452(a) ("Section 1452(a)")?

D. Should Behr's First priority Claims be equitably remanded under 28 U.S.C. § 1452(b) ("Section 1452(b)")?

E. May Behr prosecute her Fraudulent Transfer Claim and her Bulk Sales Claim in state court?

F. May CCSF prosecute its conversion claim in state court?

## IV. DISCUSSION

### A. *Sovereign Immunity Is Inapplicable*

█ Citing *People v. Steelcase, Inc.*, 792 F.Supp. 84, 86 (C.D.Cal.1992), AG and CCSF argue that the Eleventh Amendment bars removal of the actions initiated by each of them. The court disagrees. *Steelcase* is inconsistent with the weight of authority, including that of the Supreme Court and the Northern District of California,[7] and has been rejected in many subsequent decisions from other courts. *See In re Rezulin Products Liability Litigation*, 133 F.Supp.2d 272, 297 (S.D.N.Y.2001) ("the heavy weight of authority holds that the Eleventh Amendment does not bar removal"); *Regents of the Univ. of Minn. v. Glaxo Wellcome, Inc.*, 58 F.Supp.2d

---

7. *See Illinois v. City of Milwaukee*, 406 U.S. 91, 100, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972) (where state is plaintiff in suit involving federal rights, "those suits may be brought in or removed to the [federal] courts without regard to the character of the parties"), *citing Ames v. Kansas*, 111 U.S. 449, 470, 4 S.Ct. 437, 28 L.Ed. 482 (1884). *See also People v. Acme Fill Corp.*, 1997 WL 685254 (N.D.Cal. 1997) (Walker, J.) ("California brought suit against Acme of its own accord to recover civil penalties. As a plaintiff, it cannot now assert immunity from suit under the Eleventh Amendment."); *cf. Lapides v. Board of Regents of the Univ. System of Ga.*, — U.S. —, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002) (state's removal of suit to federal court constituted waiver of its Eleventh Amendment immunity).

1036, 1039 (D.Minn.1999) (same, citing numerous cases).[8] This court believes that the reasoning of the majority of the cases is more persuasive, and concludes that the Eleventh Amendment does not preclude removal of the AG action or the CCSF Action to the bankruptcy court.

B. *Plan Claims are Preempted and Removable*

■ In their respective complaints, AG and Behr allege that Corporation has manipulated the bankruptcy process in a manner constituting "unlawful, unfair and fraudulent business practices." These allegations, which this court has identified as the "Plan Claims," cannot be heard by the state court and thus will not be remanded.

■ The Bankruptcy Code preempts virtually all claims relating to alleged misconduct in the bankruptcy courts. *See Holloway v. Household Auto. Fin. Corp.*, 227 B.R. 501, 507 (N.D.Ill.1998) (finding claim under Illinois Consumer Fraud and Deceptive Practices Act preempted by Bankruptcy Code), citing *MSR Exploration, Ltd. v. Meridian Oil, Inc.*, 74 F.3d 910 (9th Cir.1996) (finding claim for malicious prosecution was preempted by Bankruptcy Code).[9] "The Bankruptcy Code

provides a comprehensive scheme reflecting a 'balance, completeness and structural integrity that suggests remedial exclusivity.'" *Shape, Inc.*, 135 B.R. at 708, *quoting Periera*, 92 B.R. at 908. "Since this federal statute is applicable here, and has its own enforcement scheme and separate adjudicative framework, it must supercede any state law remedies." *Shape, Inc.*, 135 B.R. at 708.[10]

The Ninth Circuit recognized this proposition in *MSR Exploration*, where it observed:

[A] mere browse through the complex, detailed, and comprehensive provisions of the lengthy Bankruptcy Code ... demonstrates Congress's intent to create a whole system under federal control which is designed to bring together and adjust all the rights and duties of creditors and embarrassed debtors alike. While it is true that bankruptcy law makes reference to state law at many points, *the adjustment of rights and duties within the bankruptcy process itself is uniquely and exclusively federal.*

*MSR Exploration*, 74 F.3d at 913–14 (emphasis added) (noting that preemption with respect to state law remedies for bankruptcy activities must be applied broadly;

---

8. In criticizing the *Steelcase* decision, the *Regents* court stated: "It is noteworthy that the court in *Steelcase* did not cite any authority for this proposition, nor did it attempt to distinguish the other cases, cited above, which found the Eleventh Amendment was not a bar to removal of a state court action in which a state was the plaintiff." 58 F.Supp.2d at 1040.

9. *See also Gonzales v. Parks*, 830 F.2d 1033 (9th Cir.1987) (malicious prosecution claim preempted by the Bankruptcy Code); *Pereira v. First N. Am. Nat'l Bank*, 223 B.R. 28 (N.D.Ga.1998) (finding state law claims for an accounting and unjust enrichment preempted by Bankruptcy Code); *Brandt v. Swisstronics, Inc. (In re Shape, Inc.)*, 135 B.R. 707, 708 (Bankr.D.Me.1992) (Bankruptcy Code

preempts Massachusetts Consumer Protection Act with respect to conduct arising out of or relating to the bankruptcy case).

10. In *Shape, Inc.*, the debtor sued a creditor alleging that various violations of the automatic stay constituted an unfair and deceptive business practice. *Id.* The court noted that the Bankruptcy Code contains the remedy for such violations and thus "supercede[d]" the state law. Here, as in *Shape, Inc.*, remedies are provided under the Bankruptcy Code to any party who successfully contests the ability of a debtor to reorganize or the good faith of a plan proponent, including denial of confirmation. *See* 11 U.S.C. §§ 1112(b) and 1129(a). Such remedies should be pursued exclusively in this court.

otherwise "the opportunities for asserting malicious prosecution claims would only be limited by the fertility of the pleader's mind and by the laws of the state in which the proceeding took place.") (citations omitted).

AG and Behr have cited no reported decision in which a creditor, government agency, or other party has attempted, by resort to state court, to enjoin (or extract restitution or damages from) a plan proponent for prosecuting a plan of reorganization or any aspect thereof. Rather, courts (including the Ninth Circuit) have held that similar collateral attacks on bankruptcy proceedings and the bankruptcy process should not be heard by state courts. For example, in *Gonzales,* the debtor (Gonzales) defaulted on an obligation prior to commencing his chapter 11 case. *See Gonzales,* 830 F.2d at 1033. A creditor (Parks) sought to foreclose a deed of trust she held on a house owned by Gonzales. *Id.* Shortly before the scheduled state law trustee sale, Gonzales filed a bankruptcy petition and the trustee halted the sale. *Id.* Parks subsequently filed a statutory tort action against Gonzales in California state court, claiming that the bankruptcy filing constituted an abuse of process. *Id.* at 1033–34. Gonzales did not answer the complaint, and the state court entered a default judgment against him. *Id.* at 1034.

Gonzales later filed an adversary proceeding in the bankruptcy court against Parks, seeking relief from the state court judgment. *Id.* The bankruptcy court granted Gonzales' motion for summary judgment, declaring the state court judgment void at its inception as violating the automatic stay. *Id.* The bankruptcy court then vacated the state court judgment. *Id.* The district court affirmed. *Id.*

On appeal to the Ninth Circuit, the court agreed with Parks that the filing of the abuse of process claim did not necessarily violate the automatic stay, as the automatic stay is "primarily intended to apply to claims based on prior [i.e., prepetition] debts and obligations[,]" and is "not applicable to debts or obligations that accrue after the filing of the bankruptcy petition." *See id.* at 1035. The court then noted that "the effect the [automatic stay] would have on a theoretical third category of debts and obligations, those that might accrue at the moment of the filing or by virtue of the filing, is far from clear—and that is the category involved in the case before us." *Id.* Instead, the Ninth Circuit affirmed the bankruptcy court's decision on other grounds: that is, state courts are without subject matter jurisdiction to hear a claim that the filing of a bankruptcy petition constitutes an abuse of process. *See id.*

In reaching its conclusion, the Ninth Circuit found:

Filings of bankruptcy petitions are a matter of exclusive federal jurisdiction. State courts are not authorized to determine whether a person's claim for relief under federal law, in a federal court, and within that court's exclusive jurisdiction, is an appropriate one. Such an exercise of authority would be inconsistent with and subvert the exclusive jurisdiction of the federal courts by allowing state courts to create their own standards as to when persons may properly seek relief in cases Congress has specifically precluded those courts from adjudicating. The ability collaterally to attack bankruptcy petitions in the state courts would also threaten the uniformity of federal bankruptcy law, a uniformity required by the Constitution.

\* \* \* \* \* \*

That Congress' grant to the federal courts of exclusive jurisdiction over bankruptcy petitions precludes collateral attacks on such petitions in state courts is supported by the fact that remedies

have been made available in the federal courts to creditors who believe that a filing is frivolous. Debtors filing bankruptcy petitions are subject to a requirement of good faith, and violations of that requirement can result in the imposition of sanctions. Congress' authorization of certain sanctions for the filing of frivolous bankruptcy petitions should be read as an implicit rejection of other penalties ... In any event, *it is for Congress and the federal courts, not the state courts, to decide what incentives and penalties are appropriate for use in connection with the bankruptcy process and when those incentives or penalties shall be utilized.*

*Id.* at 1035–36 (emphasis added) (citations omitted).[11]

Of particular significance in *Gonzales* is the Ninth Circuit's refusal to rely upon the automatic stay provisions of the Bankruptcy Code in reaching its holding. Instead, the court looked to the jurisdictional provisions of the Bankruptcy Code and held that state courts simply are without power to act in connection with those matters exclusively within the purview of bankruptcy court jurisdiction. For the same reason the *Gonzales* court also kept within the bankruptcy court the action against Gonzales' attorney, who was not in bankruptcy.

■ *Gonzales* is analogous to the instant case.[12] Like the filing of a bankruptcy petition generally, matters concerning confirmation of a plan of reorganization in a chapter 11 case go to the very essence of a bankruptcy court's "original and exclusive jurisdiction of all cases under title 11" (*see* 28 U.S.C. § 1334(a)), and, as a core proceeding under 28 U.S.C. § 157(b)(2)(L), plan confirmation is within the protected sphere of matters that the Ninth Circuit has held to be free from second-guessing by state courts. *See Gruntz v. County of Los Angeles (In re Gruntz)*, 202 F.3d 1074, 1083 (9th Cir.2000) ("[E]ven assuming that the states had concurrent jurisdiction, their judgment would have to defer to the plenary power vested in the federal courts over bankruptcy proceedings.... The States cannot, in the exercise of control over local laws and practice, vest State courts with power to violate the supreme law of the land.") (cites and internal quotation marks omitted).[13] Other courts, both state and federal, have reached the same conclusion. *See, e.g., Saks v. Parilla, Hubbard & Militzok*, 67 Cal.App.4th 565, 573–74, 79 Cal.Rptr.2d 120 (1998) ("Parties may not avail themselves of state court

---

**11.** *Cf. State Street Bank & Trust Co. v. Park (In re Si Yeon Park, Ltd.)*, 198 B.R. 956, 962 (Bankr.C.D.Cal.1996) (bankruptcy trustee cannot be required to obtain permission from a state court to file a bankruptcy adversary proceeding; giving state courts veto power over federal actions would violate federal supremacy and interfere with the administration of bankruptcy cases. "Moreover, the bankruptcy court has exclusive jurisdiction to determine whether a case or adversary proceeding has been improperly filed in the bankruptcy court. The exercise of that jurisdiction is particularly important when the matter involves fundamental questions of bankruptcy law[.]").

**12.** Just as a creditor cannot prosecute an abuse of process claim in state court against a bankruptcy debtor and his attorney for seeking protection of the bankruptcy court, a creditor similarly cannot sue a plan proponent in state court upon an allegation of abusive use of the bankruptcy laws.

**13.** *See also Contractors' State License Board v. Dunbar*, 245 F.3d 1058, 1063 (9th Cir.2001) (to extent licensing board erred in concluding that proceedings before it came within "police or regulatory power" exception to the automatic stay in licensee's Chapter 13 case, such administrative proceedings were void *ab initio*, and bankruptcy court was under no obligation to extend full faith credit to board's determination).

tort remedies to circumvent federal remedies for their opponents' alleged misuse of the bankruptcy process."); *Idell v. Goodman,* 224 Cal.App.3d 262, 271, 273 Cal. Rptr. 605 (1990) (finding that sanctions contained in Bankruptcy Code preempted state action based on allegations that creditor filed adversary proceeding in bad faith); *Gene R. Smith Corp. v. Terry's Tractor, Inc.,* 209 Cal.App.3d 951, 954, 257 Cal.Rptr. 598 (1989) (holding that specific remedial provisions in Bankruptcy Code preempted debtor's state action for abuse of process and malicious prosecution based on creditors' allegedly malicious filing of involuntary bankruptcy petition); *see also Gonzales,* 830 F.2d at 1036 ("A Congressional grant of exclusive jurisdiction to federal courts includes the implied power to protect that grant ... A state court judgment entered in a case that falls within the federal courts' exclusive jurisdiction is subject to collateral attack in the federal courts.") (citations omitted). Because the true gravamen of the Plan Claims are federal bankruptcy issues, these claims are pre-empted and shall not be remanded.[14]

### C. First Priority Claims Are Not Removable

■ Section 1452(a) provides that a "party may remove any claim or cause of action in a civil action, *other than* a proceeding before the United States Tax Court or *a civil action by a governmental unit to enforce such governmental unit's police or regulatory power ...*" 28 U.S.C. § 1452(a) (emphasis added). For the reasons stated below, the court concludes that the First Priority Claims asserted by AG and CCSF constitute "police and regulatory power" claims which are non-removable under Section 1452(a) and which are not exclusively "property of the estate."

AG and CCSF assert their First Priority Claims pursuant to Section 17200. The California Supreme Court has determined that an action for civil penalties and an injunction brought by a governmental agency under Section 17200 "is fundamentally a law enforcement action designed to protect the public and not to benefit private parties." *People v. Pacific Land Research Co.,* 20 Cal.3d 10, 17, 141 Cal.Rptr. 20, 24, 569 P.2d 125 (1977); *see also Massachusetts v. First Alliance Mortg. Co. (In re First Alliance Mortg. Co.),* 263 B.R. 99, 108 (9th Cir. BAP 2001) ("it is well-established that consumer protection is a valid exercise of the police and regulatory power ..."). Therefore, the portions of the AG Action and the CCSF Action [15] asserting

---

**14.** AG and CCSF contend that their respective actions must be remanded because Section 1452(a) prohibits removal of "civil actions by a governmental unit to enforce such governmental unit's police or regulatory powers." As discussed later in this memorandum decision, the First Priority Claims do constitute claims for enforcement of the police and regulatory powers of the AG and CCSF and are thus not removable. The Plan Claims asserted by AG, on the other hand, are not police or regulatory claims and are therefore subject to remand.

A police or regulatory action arises when a governmental body enforces a statute, law or regulation which is effective whether or not a bankruptcy exists and which is not preempted by bankruptcy law. If, however, a governmental body is attempting to claim that the bankruptcy process has been abused, such a claim falls within the exclusive jurisdiction of the bankruptcy court. Such claims relating to the plan or the plan process are not subject to a state's police or regulatory power, but instead fall within the bankruptcy court's authority to regulate activities occurring in the context of a case pending before it. The AG's Plan Claims are such claims and, consequently, Section 1452(a) does not protect them from removal.

**15.** Behr's First Priority Claims are not subject to the removal exception of Section 1452(a) since Behr is not a "governmental unit." Nevertheless, as discussed in Section IV(D), those particular claims should be equitably remanded.

First Priority Claims [16] are "police or regulatory power" actions and cannot be removed. 28 U.S.C. § 1452(a).

Corporation asserts that the AG Action and the CCSF Action are not police power actions because they would not satisfy the "pecuniary purpose" and "public policy" tests established to determine if an action is exempt from the automatic stay pursuant to 11 U.S.C. § 362(b)(4). Section 362(b)(4) is inapplicable to the issues before it. The court is not dealing with questions about exceptions to the automatic stay found in 11 U.S.C. § 352(b)(4). Rather, it must construe provisions in Section 1452 which describe what actions may not be removed. The pertinent language of the two sections is nearly identical, but the cases considering the pecuniary purpose and public policy issues have focused on whether as a matter of policy there should or should not be an exception to the automatic stay. Where the government acts like a creditor, it is stayed just like other creditors. When it is enforcing law, dealing with regulatory and law enforcement matters, the automatic stay does not stand in the way. But whether the automatic stay does or does not apply has little to do with whether actions—stayed or not—may be removed to the bankruptcy court. Nothing suggests that automatic stay considerations should inform the court's decision under Section 1452.[17]

■ Corporation also contends that 28 U.S.C. § 1441 ("Section 1441")—a statute governing removals generally without a police or regulatory power exception—is available as an alternative means to remove the AG Action and the CCSF Action to the bankruptcy court, citing *Things Remembered, Inc. v. Petrarca,* 516 U.S. 124, 116 S.Ct. 494, 133 L.Ed.2d 461 (1995). The court disagrees for several reasons. First, and most importantly, Section 1441 states that "[e]xcept as otherwise expressly provided by Act of Congress," any civil action over which federal district courts have original jurisdiction may be removed to federal district court. Section 1452(a) "otherwise expressly provide[s]" that state police power actions related to a bankruptcy case are not removable. Under the express exception of Section 1441, then, the First Priority Claims are not removable.

Second, Section 1452 is more specific than the general provisions of Section 1441. As such, Section 1452 takes precedence over Section 1441. *Neary v. Padilla (In re Padilla),* 222 F.3d 1184, 1192 (9th Cir.2000) ("Statutory construction canons require that '[w]here both a specific and a general statute address the same subject matter, the specific one takes precedence regardless of the sequence of the enactment, and must be applied first.'"). Third, *Things Remembered* is distinguishable because it does not address the specif-

---

**16.** As discussed previously at footnote 14, the Plan Claims are *not* claims seeking to enforce the police or regulatory powers of the AG and CCSF, since conduct occurring in the context of proposing and confirming a plan of reorganization is not subject to a state's regulatory power.

**17.** In any event, as noted previously, the California Supreme Court has determined that a governmental unit's action to enforce Section 17200 does serve public policy. Moreover, in *United States v. Klein (In re Chapman),* 264 B.R. 565, 571 (9th Cir. BAP 2001), BAP noted

that—under the 1998 revisions to 11 U.S.C. § 362—a governmental action to obtain a money judgment is not stayed, but that any action to enforce the money judgment is. In light of the 1998 revisions, the "pecuniary interest" test may have lost some of its relevance. Nonetheless, to the extent AG and CCSF seek to punish Corporation for purported violations and to deter similar conduct in the future, their actions satisfy the "pecuniary interest" test. *Id.* at 570; *First Alliance,* 263 B.R. at 108–09.

ic provision of Section 1452(a) excepting police power actions from removal; rather, it deals with the applicability of a statute limiting appellate review to remand orders made in suits removed under Section 1452 and Section 1441.

Corporation also contends that the First Priority Claims are removable because only Debtor has standing to prosecute such claims. The court disagrees. The First Priority Claims fall within the ambit of Section 17200. Under the express terms of Cal. Bus & Prof.Code § 17204, civil actions to enforce the Unfair Business Practices Act (e.g., Section 17200 may be brought by "any person acting for the interests of itself, its members, or the general public"). Therefore, the Section 17200 claims do not belong exclusively to Debtor or its creditors, and may be remanded.[18]

■ Corporation further asserts that this court should retain the First Priority Claims because they are related to the bankruptcy case and because the court has supplemental jurisdiction over them under 28 U.S.C. § 1367 and 1441(c). The court dismisses Corporation's "related to" jurisdiction arguments as irrelevant. Assuming *arguendo* that the First Priority Claims are related to the bankruptcy case (however tangentially, inasmuch as Debtor is not asserting the claims and the claims are not being asserted against Debtor), such claims cannot be removed here under Section 1452(a).[19] Congress did not create an exception (for related matters) to the exception to the bankruptcy removal statute discussed, supra.

In addition, the court will not exercise supplemental jurisdiction over the First Priority Claims even though it is retaining jurisdiction over the Plan Claims and (as discussed below) over CCSF's conversion and unjust enrichment claims and Behr's Fraudulent Transfer Claim and Bulk Sales Claim. Pursuant to 28 U.S.C. § 1367 ("Section 1367"), in any civil action where a district has original jurisdiction, "except . . . as expressly provided by Federal statute" the district court "shall have supplemental jurisdiction over all other claims *that are so related to claims* in the action within such original jurisdiction *that they form part of the same case or controversy* . . ." 28 U.S.C. § 1367(a). Section 1367(c) notes, however, that the court may decline to exercise supplemental jurisdiction over a claim if "the claim substantially predominates over the claim" over which the court has original jurisdiction or if "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(2) and (4).

In this case, supplemental jurisdiction is not required under Section 1367(a) because Section 1452(a) "expressly provide[s] otherwise" by preventing removal of the First Priority Claims. *See Estate of Tabas,* 879 F.Supp. 464, 467 (E.D.Pa.1995) (Section 1367 "does not allow a party to remove an otherwise unremovable action to federal court for consolidation with a related federal claim"). In addition, Section 1367(a) is inapplicable because the Plan Claims and the First Priority Claims do not form the same case or controversy; they do not arise from a common factual nucleus. Instead, they are claims based on distinct

---

18. This court expresses no opinion on whether Debtor could prosecute a Section 17200 action against Corporation or its officers and directors.

19. If AG had brought these claims here initially, the court may have had "related to" jurisdiction to the extent any funds recovered by AG would flow to the estate. AG brought the First Priority Claims in state court and to the extent they are "police power" claims, they simply cannot be removed to this court.

and easily divisible pre-petition and post-petition conduct.

Nonetheless, even if Section 1367(a) were applicable, the court would decline to exercise jurisdiction because the First Priority Claims predominate over the Plan Claims in the AG Complaint and the Behr Complaint.[20] More importantly, another compelling reason exists for this court to decline supplemental jurisdiction: the First Priority Claims constitute non-removable police power claims and Section 1367 should not be used to bootstrap non-removable claims to related federal claims. *Tabas,* 879 F.Supp. at 467.

### D. Behr's Section 17200 Claims Should Be Remanded Under 28 U.S.C. Section 1452(a)

██ As a private citizen, Behr cannot assert the "police power" exception to removal available to "governmental units" under Section 1452(a). Nonetheless, her "First Priority Claims" asserted under Section 17200 are virtually identical to the Section 17200 First Priority Claims of AG and CCSF. The latter claims, which involve identical factual issues and similar legal issues as Behr's First Priority Claims, are being remanded under Section 1452(a). Therefore, under the doctrine of equitable remand set forth in Section 1452(b), grounds exist to remand Behr's First Priority Claims. Such a remand avoids similar litigation in multiple fora[21] and promotes the goals of judicial efficiency.

### E. Behr's Fraudulent Transfer Claim And Bulk Sales Claim Belong To Estate And Should Not Be Remanded

██ Because (as discussed below), Behr lacks standing to assert her Fraudulent Transfer Claim and her Bulk Sales Claim, those particular claims should not be remanded. Such claims belong to the estate of Debtor and fall within this court's core jurisdiction.

██ Absent court approval, only a trustee or debtor in possession has standing to assert a fraudulent transfer action. *American National Bank of Austin v. MortgageAmerica Corp. (In re MortgageAmerica Corp.),* 714 F.2d 1266 (5th Cir. 1983) (creditor's cause of action under the Texas Fraudulent Transfers Act passed to trustee, who is charged with prosecuting on behalf of all creditors and shareholders); *AP Industries, Inc. v. SN Phelps & Co. (In re AP Industries, Inc.),* 117 B.R. 789, 800 (Bankr.S.D.N.Y.1990) (holding that initiation of state law fraudulent transfer action violated the automatic stay; court sanctioned creditor) ("intercession of a bankruptcy petition vests standing in a trustee or debtor-in-possession to prosecute an action for recovery of a fraudulent conveyance . . . 'It is axiomatic that a duly qualified trustee in bankruptcy represents the estate and is the only proper party to maintain any action under Code § 544(b) . . . and that the creditors of the estate have no right to proceed independently in their own names . . .' ").

**20.** In the Behr Action the First Priority Claims also predominate over the Fraudulent Transfer Claim and Bulk Sales Claim (which, as discussed later, Behr does not have standing to prosecute). The First Priority Claims also predominate over CCSF's conversion and unjust enrichment claims.

**21.** Behr's First Priority Claims will be remanded back to the Superior Court of the County of Santa Clara, while the First Priority Claims of AG and CCSF will be remanded back to the Superior Court of the County of San Francisco. Upon remand, to facilitate the interests of judicial economy, consolidation of these actions appears appropriate but that is for the state courts to consider.

The Fifth Circuit explained why a trustee or debtor-in-possession has the sole standing to pursue fraudulent transfer actions:

> The "strong arm" provision of the current Code, 11 U.S.C. § 544, allows the bankruptcy trustee to step into the shoes of a creditor for the purpose of asserting causes of action under state fraudulent conveyance acts for the benefit of all creditors, not just those who win a race to judgment. [Citation omitted.] A trustee acting under section 544 "acts as a representative of creditors," [citation omitted] and any property recovered is returned to "the estate for the eventual benefit of all creditors." [Citations omitted.] The Supreme Court has, in fact, expressly noted that section "541(a)(1) is intended to include in the estate any property made available to the estate by other provisions of the Bankruptcy Code," which would include property made available through section 544. [Citation omitted.] *Actions for the recovery of the debtor's property by individual creditors under state fraudulent conveyance laws would interfere with this estate and with the equitable distribution scheme dependent upon it, and are therefore appropriately stayed under section 362(a)(3). Any other result would produce near anarchy where the only discernible organizing principle would be first-come-first-served. Even without the Bankruptcy Code and the policies that support it, we would be reluctant to elevate such a principle to a rule of law.*

*MortgageAmerica,* 714 F.2d at 1275–76 (emphasis added).

Similarly, the creditors of Debtor who had standing to prosecute claims under any bulk sales law prior to the petition date no longer enjoy such standing. *AP Industries,* 117 B.R. at 800 (bankruptcy vests power to prosecute such claims on trustee or debtor in possession; after bankruptcy, judgment creditor's "status, as a party with standing to void transfers as fraudulent conveyances or as defective bulk sales, was impaired by the superseding bankruptcy cases.") (citations and quotations omitted).

California Commercial Code Section 6107 entitles "claimants" to sue for violation of the Bulk Sales Law. The transferor (here Debtor, according to Behr) has no such right. *See* Cal. Comm.Code § 6107(a) and (b) and UCC Comment, ¶ 1. Under 11 U.S.C. § 544(b), the debtor in possession would have such a right in place of aggrieved creditors.

Since the estate is the only party with standing to assert the Fraudulent Transfer Claim and the Bulk Sales Claim, Behr cannot pursue these claims. By initiating such actions Behr violated the automatic stay. Moreover, since these claims belong to the estate, they fall within this court's core jurisdiction under 28 U.S.C. § 157(H) and (F). Consequently, the court will not remand these claims.

F. *CCSF's Conversion And Unjust Enrichment Claims Belong To Estate And Should Not Be Remanded*

As noted previously, CCSF's Complaint indicates that at the time of the purported conversions, the money being converted was owned and held by Debtor. As such, the claim of conversion belongs to Debtor's estate and CCSF lacks standing to assert it. *Kremen v. Cohen,* 99 F.Supp.2d 1168, 1172 (N.D.Cal.2000) (elements of conversion require plaintiff to have "ownership or right to possession of the property at the time of the conversion"); *Jenkins v. Homer (In re Homer),* 45 B.R. 15, 25 (debtors' claim for conversion became property of estate and assertable only by trustee). CCSF's unjust en-

richment claim is too similar to be treated any differently. For the same reasons that Behr lacks standing to pursue her Fraudulent Transfer Claim and her Bulk Transfer Claim, CCSF lacks standing to pursue the conversion claim and the unjust enrichment claim, which belong to the estate. Therefore, those claims fall within this court's core jurisdiction and will not be remanded.

## V. CONCLUSION

An order remanding the third cause of action of the CCSF Complaint is being issued concurrently with this Memorandum Decision.

In order to avoid confusion in both this court and in the state courts, no later than July 14, 2002, AG and Behr should file and serve amended complaints, either deleting their Plan Claims or separating the Plan Claims and the First Priority Claims into distinct causes of action.[22]

The court will hold a status conference on July 22, 2002, at 9:30 a.m. with respect to the non-remanded claims and Corporation's pending motions to dismiss. At that conference the court will set a briefing schedule for those motions; nothing pertaining to them should be filed earlier. The court will also discuss with counsel whether the Plan Claims should be consolidated with any objections to confirmation of the Plan to be filed by AG, CCSF or Behr.

At the same conference the court will determine whether the AG Complaint and the Behr Complaint have been properly amended consistent with this Memorandum Decision. If so, the court will then

issue remand orders in the AG Action and the Behr Action. Counsel for Corporation should be prepared to comment on the amended complaints at the status conference.

---

**22.** In other words, the AG's Plan Claims set forth in paragraphs 99–107 and 113–115 of the AG Complaint should either be deleted or be placed into a separate cause of action alleging post-petition events that purportedly violate Section 17200. Similarly, Behr's Plan Claims set forth in paragraph 121 of Behr's Complaint should either be deleted or be placed into a separate cause of action alleging post-petition events that purportedly violate Section 17200.